UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE


Nafiou Lamidi

      v.                           Civil No. 25-cv-297-LM-TSM

FCI Berlin, Warden et al


### O R D E R

Petitioner Nafiou Lamidi petitions for a writ of habeas corpus under 28 U.S.C. § 2241. Lamidi contends that his present immigration detention violates the Immigration and Nationality Act ("INA") because 8 U.S.C. § 1226 supplies the statutory authority for his confinement, and that statute's implementing regulations entitle him to a bond hearing before an immigration judge ("IJ"). Because the IJ overseeing his removal proceedings has declared that she is without authority to provide Lamidi a bond hearing, Lamidi contends that his present detention is unlawful.

The government moved to dismiss under Federal Rule of Civil Procedure 12(b)(6). Doc. no. 7. On September 11, 2025, the court held a hearing that was intended to address the government's motion, as well as whether Lamidi is entitled to a bail hearing in this court pursuant to this court's inherent authority to release habeas petitioners. See Gomes v. US Dep't of Homeland Sec., Acting Sec'y, 460 F. Supp. 3d 132, 144 (D.N.H. 2020). However, in a reply brief (doc. no. 12) filed the day before the hearing, the government took the position that the court should simply

rule on the habeas petition itself because the merits of the case have been fully briefed. Counsel for Lamidi agreed with the government on the record at the September 11 hearing that the court could issue a ruling on the petition at this point.

In light of the parties' agreement, the court issued an oral ruling at the September 11 hearing granting Lamidi's petition for a writ of habeas corpus and denying doc. no. 7, and explained that a written order detailing the court's reasoning was forthcoming. This is that order.

## STANDARD OF REVIEW

This court may grant a writ of habeas corpus to a person held "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241. The petition "may be resolved on the merits without [an evidentiary] hearing when, as here, the material facts are not in dispute." Cummings v. Fed. Corr. Inst., Berlin, Civ. No. 22-cv-468-SM-AJ, 2024 WL 1256068, at *1 (D.N.H. Mar. 25, 2024). The petitioner has the burden of proving that his confinement is unlawful. Espinoza v. Sabol, 558 F.3d 83, 89 (1st Cir. 2009).

## BACKGROUND[1]

Lamidi is a 36-year-old man from Benin, a small country in West Africa, which he fled due to fear of persecution. On November 2, 2024, Customs and Border Protection encountered Lamidi in Sasabe, Arizona near the United States-Mexico

---

[1] The following facts are drawn from Lamidi's petition and the attachments thereto. See doc. no. 1. They are not in dispute.

border. Officers determined that Lamidi had crossed the border unlawfully, detained him, placed him in expedited removal proceedings under 8 U.S.C. § 1225(b)(1), and referred him to an asylum officer for a credible fear interview.

Prior to the credible fear interview, however, the Department of Homeland Security ("DHS") issued Lamidi a "Notice to Appear" in standard removal proceedings under 8 U.S.C. § 1229a. Doc. no. 1-7 at 3; see 8 C.F.R. § 208.30(b) ("[T]he asylum officer, after supervisory concurrence, may refer the [noncitizen] for proceedings under section [1229a] without making a credible fear determination."). The Notice to Appear alleges that Lamidi is a noncitizen "present in the United States who has not been admitted or paroled," and that he is subject to removal under 8 U.S.C. § 1182(a)(7)(A)(i)(I) for lack of proper documentation "at the time of application for admission" and under § 1182(a)(6)(A)(i) as a noncitizen "present in the United States without being admitted or paroled, or who has arrived in the United States at any time or place other than as designated by the Attorney General." Doc. no. 1-7 at 3. The Notice to Appear also vacated the expedited removal order. In light of the issuance of the Notice to Appear, the asylum officer did not render a finding as to whether Lamidi had a credible fear of persecution.

On January 3, 2025, DHS released Lamidi from custody pursuant to an "Order of Release on Recognizance." Doc. no. 1-1 at 2. The order states that Lamidi was being "released on [his] own recognizance" "[i]n accordance with section 236 of the Immigration and Nationality Act," which is codified at 8 U.S.C. § 1226. Id. That same day, DHS issued a "Notice of Custody Determination." Doc. no. 1-2 at 2. The

notice states: "Pursuant to the authority contained in section 236 of the Immigration and Nationality Act and [8 C.F.R. § 236], [DHS has] determined that, pending a final administrative determination" in Lamidi's case, he would be released on his own recognizance. Id. The notice further provides that Lamidi was entitled to "request a review of this custody determination by an immigration judge." Id.

After his release, Lamidi settled in Lyndon Center, Vermont, where he lives with a host family and receives assistance from the Northeast Kingdom Asylum Seekers Network, a nonprofit organization that offers aid to a local Vermont community of asylum-seekers. In the short time he has been living in Vermont, he has made a remarkably positive impression on those with whom he comes into close contact. See doc. no. 1-5 at 15-51 (ten letters from residents attesting to his good character). He assists his host family in their volunteer efforts, such as by helping put on weekly community lunches and food pantries. Lamidi takes adult education courses, including English as a Second Language. He has not yet received a work permit, so he has been unable to secure employment, but various community members have attested to his willingness to help them with projects and chores around their homes. Lamidi has started working toward his driver's permit and applied for asylum. He has attended all ICE check-ins as required, and he has no criminal record.[2]

_____

[2] The government conceded that, were the court to entertain arguments on bail, it had no evidence that Lamidi was a danger. And the only evidence of flight risk

4

On May 12, 2025, DHS arrested Lamidi during a routine check-in pursuant to an administrative warrant issued under § 1226. In a Notice of Custody Determination issued that same day, DHS stated that it was exercising its discretion under § 1226 to detain Lamidi pending a final administrative determination in his case. The Notice also states that Lamidi "may request a review of this custody determination by an immigration judge." Id. at 3.

On May 28, 2025, counsel for Lamidi in his removal proceedings filed a motion for a custody redetermination before an IJ. The IJ denied that motion on June 5, 2025, concluding that Lamidi "is statutorily ineligible for IJ custody redetermination." Doc. no. 1-6 at 2. Lamidi has appealed the IJ's order to the Board of Immigration Appeals ("BIA").

Lamidi filed the instant habeas petition on August 8, 2025.

## DISCUSSION

Lamidi brings a single claim in his petition: that his confinement without a bail hearing before an IJ violates § 1226. The government counters that Lamidi has failed to exhaust his administrative remedies and that, in any event, his claim fails on the merits because he is an "applicant for admission" and therefore subject to mandatory detention under § 1225(b)(1). The court will first provide an overview of

---

that the government could offer stemmed from what the government considered Lamidi's lack of ties to the community and his low chance of success in removal proceedings. The evidence of Lamidi's ties to the Vermont community in which he is living are attached to his petition (doc. no. 1-5 at 15-51); that evidence was uncontroverted by the government. And the government offered no evidence that cast doubt on the positive character assessments contained in the many letters attached to Lamidi's petition.

the relevant statutory scheme before addressing exhaustion and the merits of Lamidi's claim.

I.    <u>Overview of Statutory Scheme</u>

"Section 1226 generally governs the process of arresting and detaining . . . [noncitizens] already in the country pending the outcome of removal proceedings," including noncitizens who are "present in the country" despite being "inadmissible at the time of entry." Jennings v. Rodriguez, 583 U.S. 281, 288-89 (2018). "[O]nce inside the United States . . . the default rule" is set forth in § 1226(a): "The Attorney General may issue a warrant for the arrest and detention of [a noncitizen] 'pending a decision on whether the [noncitizen] is to be removed from the United States.'" Id. at 288 (quoting § 1226(a)). Following the noncitizen's arrest, the Attorney General "may continue to detain" the noncitizen or "may release" the noncitizen on bond or "conditional parole." § 1226(a)(1)-(2). "Federal regulations provide that [noncitizens] detained under § 1226(a) receive bond hearings at the outset of detention." Jennings, 583 U.S. at 306 (citing 8 C.F.R. §§ 236.1(d)(1), 1236.1(d)(1)).

Section 1225(b), by contrast, "applies primarily to [noncitizens] seeking entry into the United States." Id. at 297. Detention under § 1225(b) may be pursuant to subsection (b)(1) or (b)(2).

Section 1225(b)(1) applies to noncitizens "arriving in the United States." § 1225(b)(1). "If an immigration officer determines that [a noncitizen] who is arriving in the United States . . . is inadmissible" because the noncitizen has made

misrepresentations or lacks valid documentation, "the officer shall order the [noncitizen] removed from the United States without further hearing or review unless the [noncitizen] indicates either an intention to apply for asylum . . . or a fear of persecution." § 1225(b)(1)(A)(i). If the noncitizen indicates an intention to apply for asylum or a fear of persecution, "the officer shall refer the [noncitizen] for an interview by an asylum officer." § 1225(b)(1)(A)(ii). The asylum officer "shall conduct" these interviews "either at a port of entry or at such other place designated by the Attorney General." § 1225(b)(1)(B)(i). "If the officer determines at the time of the interview that [the noncitizen] has a credible fear of persecution . . . [the noncitizen] shall be detained for further consideration of the application for asylum."[3] § 1225(b)(1)(B)(ii).

"[I]f the officer determines that [the noncitizen] does not have a credible fear of persecution, the officer shall order the [noncitizen] removed from the United States." § 1225(b)(1)(B)(iii)(I). The noncitizen may appeal this determination to an immigration judge for "prompt review," which "shall be concluded as expeditiously as possible, to the maximum extent practicable within 24 hours, but in no case later than 7 days after the date" that the asylum officer determined the noncitizen lacked a credible fear of persecution. § 1225(b)(1)(B)(iii)(III). The noncitizen "shall be

---

[3] "Credible fear of persecution" is defined as "a significant possibility, taking into account the credibility of the statements made by the [noncitizen] in support of the [noncitizen's] claim and such other facts as are known to the officer, that the [noncitizen] could establish eligibility for asylum." § 1225(b)(1)(B)(v).

detained pending a final determination of credible fear of persecution and, if found

not to have such a fear, until removed." § 1225(b)(1)(B)(iii)(IV).

Section 1225(b)(2) applies to a "an applicant for admission" who is "seeking

admission" and whom an "examining immigration officer" determines during an

"inspection" is not "clearly and beyond a doubt entitled to be admitted."

§ 1225(b)(2)(A). If the "examining immigration officer" finds pursuant to her

"inspection" that the "applicant for admission" is "seeking admission" but is not

"clearly and beyond a doubt entitled to be admitted," then "the [noncitizen] shall be

detained for a proceeding under section 1229a," the statute governing standard,

non-expedited removal proceedings. Id.

In summary, noncitizens detained under § 1226(a) are generally entitled to a

bond hearing before an IJ, while those detained under § 1225(b) are not.

## II.    Any Failure to Exhaust Is Excused

The government argues that Lamidi's claim fails for lack of exhaustion.

Because Lamidi's appeal of the IJ's determination that he is ineligible for a custody

redetermination is pending before the BIA, the government contends that the BIA

is in the best position to review the IJ's order.

"There is no statutory requirement that a federal prisoner exhaust

administrative remedies prior to seeking habeas relief under 28 U.S.C. § 2241."

Lettieri v. Unit Team Manager English, Civ. No. 25-cv-10859-LTS, 2025 WL

1342766, at *1 (D. Mass. May 8, 2025), appeal filed, No. 25-1504 (1st Cir. May 27,

2025). Nevertheless, the availability of an administrative remedy "sometimes

provid[es] a 'prudential reason' not to permit a detainee to seek habeas relief."
Cockerham v. Boncher, 125 F.4th 11, 16 (1st Cir. 2024) (brackets omitted) (quoting
Boumediene v. Bush, 553 U.S. 723, 793 (2008)). Because this prudential exhaustion
principle "arises under common law, not a mandate of Congress, 'federal courts
have some leeway' to relax [it]." Carroll v. Warden of FCI Berlin Robert Hazlewood,
Civ. No. 21-cv-139-PB, 2021 WL 2877463, at *2 (D.N.H. May 26, 2021) (quoting
Anversa Partners Healthcare Sys., Inc., 835 F.3d 167, 175 (1st Cir. 2016)), R&R
approved, 2021 WL 2857184, at *1 (D.N.H. July 7, 2021). Exhaustion is not
required, for example, "with regard to claims which turn only on statutory
construction." Coleman v. U.S. Parole Comm'n, 644 F. App'x 159, 162 (3d Cir. 2016).
Nor is exhaustion required when exhaustion would be futile, as when the relevant
administrative body "has indicated predetermination of the issue." Wright v. United
States, No. C19-5254-RBL-TLF, 2019 WL 2746630, at *7 (W.D. Wash. June 5,
2019).

  Both of these exceptions apply in this case. Lamidi's claim "turns on a pure
question of statutory interpretation": given the undisputed facts, is he detained
under § 1225 or § 1226? Williams v. Warden, FCI Berlin, --- F. Supp. 3d ----, 2025
WL 2207024, at *6 (D.N.H. Aug. 4, 2025). Moreover, the BIA has recently held that
all noncitizens present in the United States without admission come within
§ 1225(b)'s mandatory detention framework and are ineligible for bond hearings
before an IJ under § 1226. Matter of Yajure Hurtado, 29 I. & N. Dec. 216, 218-220
(BIA 2025). Because the BIA "has indicated predetermination of the issue," any

appeal to the BIA of the IJ's decision would be futile. Wright, 2019 WL 2746630, at *7.

For these reasons, any failure to exhaust Lamidi's claim is excused.

III.    Lamidi is Detained Under § 1226

As discussed above, § 1226 generally governs the arrest and detention of noncitizens already present in the country, while § 1225(b) applies to the detention of noncitizens seeking to enter the country. In this case, Lamidi was arrested in the interior of the United States after residing here for approximately five months pursuant to an Order of Release on Recognizance issued under § 1226. In addition, the May 2025 arrest preceding his current confinement was pursuant to an administrative warrant issued under § 1226 and a Notice of Custody Determination expressly stating that DHS was exercising its discretion to detain Lamidi under § 1226, a decision which Lamidi could "request an immigration judge review." Doc. no. 1-3 at 3. Therefore, Lamidi's present confinement is pursuant to § 1226 and he is entitled to a bond hearing before an IJ. See, e.g., Romero v. Hyde, --- F. Supp. 3d ----, 2025 WL 2403827, at *1 (D. Mass. Aug. 19, 2025) (collecting cases).

Resisting this conclusion, the government argues that Lamidi is an "applicant for admission" and that all applicants for admission are "subject to mandatory detention under 8 U.S.C. § 1225(b)." Doc. no. 7-1 at 6. Specifically, the government argues that Lamidi is detained pursuant to § 1225(b)(1).[4]

---

[4] The government does not argue in the alternative that Lamidi is detained under § 1225(b)(2). Because the government has waived that argument, this court

There are two provisions of § 1225(b)(1) that require the detention of noncitizens "arriving in the United States: §§ 1225(b)(1)(B)(ii) and 1225(b)(1)(B)(iii)(IV). It is somewhat unclear which provision the government intends to rely on. Regardless, neither applies to Lamidi.

As an initial matter, these provisions do not apply to all "applicants for admission";[5] they apply to noncitizens "arriving in the United States." § 1225(b)(1). While Lamidi could have been subject to § 1225(b)(1) when he was detained at or near the border in November 2024, he was released on an Order of Release on Recognizance issued under § 1226 in January 2025[6] and later rearrested on a § 1226 warrant in May 2025. Lamidi challenges his detention following that May 2025 arrest—and, at that time, he was no longer "arriving in the United States." See Lopez Benitez v. Francis, --- F. Supp. 3d ----, 2025 WL 2371588, at *8 (S.D.N.Y. Aug. 13, 2025) (explaining that, although the petitioner may have been subject to § 1225(b) when he was apprehended and detained at or near the border in 2023, the petitioner's "initial arrest is not what is at issue in this case. It is his 2025 arrest, which occurred at a time when he was (and had long been) residing in the United

---

does not address it. See Walker-Butler v. Berryhill, 857 F.3d 1, 7 (1st Cir. 2017) (arguments not raised are waived).

[5] "Applicant for admission" is a term of art in the INA. A noncitizen who is "present in the United States who has not been admitted or who arrives in the United States . . . shall be deemed . . . an applicant for admission." 8 U.S.C. § 1225(a)(1).

[6] The government's reliance on Matter of Q. Li, 29 I. & N. Dec. 66 (BIA 2025), is misplaced for the reasons articulated in Jimenez v. FCI Berlin, Warden, Civ. No. 25-cv-326-LM-AJ, at 12-14 & n.6 (D.N.H. Sept. 8, 2025) (doc. no. 16).

States, and thus subject to § 1226(a)"); see also 8 C.F.R. § 1.2 (defining "arriving alien" as "an applicant for admission coming or attempting to come into the United States").

In addition, § 1225(b)(1)(B)(ii) mandates detention during consideration of a noncitizen's application for asylum only if the asylum officer "determines at the time of the [credible fear] interview that" the noncitizen "has a credible fear of persecution." § 1225(b)(1)(B)(ii). Here, the asylum officer did not determine at the time of Lamidi's credible fear interview that he had a credible fear of persecution. To the contrary, no credible fear interview ever occurred, because DHS exercised its discretion to place Lamidi in full removal proceedings prior to the interview. See doc. no. 1-7 at 2-3; 8 C.F.R. 208.30(b). Because the asylum officer never conducted a credible fear interview, § 1225(b)(1)(B)(ii) is inapplicable.[7]

To the extent the government intends to argue that Lamidi is subject to detention under § 1225(b)(1)(B)(iii)(IV), the government fares no better. That subsection mandates the detention of noncitizens arriving in the United States pending an appeal to an IJ of an asylum officer's determination at the interview stage that the noncitizen lacks a credible fear of persecution until the IJ renders "a final determination of credible fear . . . and, if found not to have such a fear, until

---

[7] For this reason, the government is incorrect in relying upon Matter of M-S-, 27 I. & N. Dec. 509 (U.S. Atty. Gen. 2019). M-S- decided that noncitizens "originally placed in expedited [removal] proceedings and then transferred to full [removal] proceedings after establishing a credible fear [are] ineligible for bond, whether they are arriving at the border or are apprehended in the United States." M-S-, 27 I. & N. Dec. at 515 (emphasis added). Here, no credible fear determination was ever rendered.

removed." § 1225(b)(1)(B)(iii)(IV). This provision is inapplicable—the asylum officer did not make a credible fear determination at the interview stage, so there was no finding to appeal.

For these reasons, the government's arguments fail. Lamidi, who was arrested in the interior of the country after residing here for approximately five months pursuant to a grant of conditional parole under § 1226, is entitled to a bond hearing before an IJ at which the IJ "is authorized to exercise the authority in section [1226]." 8 C.F.R. § 236.1(d)(1).

## CONCLUSION

Lamidi's petition for a writ of habeas corpus (doc. no. 1) is granted, and the government's motion to dismiss (doc. no. 7) is denied. Respondents are ordered to provide Lamidi with a bond hearing before an IJ pursuant to § 1226 no later than September 18, 2025. Parties shall file a status report on or before September 19, 2025 advising the court as to whether a bond hearing has occurred and the results of that hearing.

SO ORDERED.

_____

Landya McCafferty
United States District Judge

September 15, 2025

cc:    Counsel of Record